IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Tyrone Lucas, | ) | C/A No.: 1:09-1601-TLW-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Angela Brown, DHO, Captain Kevin Ford, Captain E. Bittenger, Lt. Alice Fleming, Lt. Audrey Price, Officer Shannon Dean, Officer Sauls, Officer Donald Tucker, Officer Patricia Cook, Vernon Tucker, Ms. Florence Kline, and Ms. Annason, | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, who is proceeding *pro se* in this action, alleges his constitutional rights have been violated and brings this action pursuant to 28 U.S.C. § 1983. Before the court are the following motions: (1) Defendants' Motion for Summary Judgment [Entry #36]; and (2) Plaintiff's Motion for a Preliminary Injunction [Entry #51]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motion for summary judgment is dispositive, this Report and Recommendation is entered for review by the district judge.

I.  Factual and Procedural Background

Plaintiff's verified complaint was filed on June 19, 2009. Defendants filed their motion for summary judgment on February 2, 2010. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to

Defendants' motion [Entry #37]. Plaintiff filed a response in opposition to Defendants' motion on February 12, 2010 [Entry #39].

Plaintiff's complaint alleges that on various occasions, Defendants prevented him from sending legal mail and did not timely deliver incoming legal mail. Plaintiff specifically alleges he was denied access to the law library and thereby prevented from timely objecting to the Report and Recommendation in C/A No. 05-2007-TLW. Additionally, Plaintiff complains generally of various incidents in which he was allegedly denied due process based on "frivolous" disciplinary infractions. Specifically, he complains of one conviction in which Defendants did not provide him "counsel substitute." He complains that all of Defendants actions are in retaliation for Plaintiff's assertion of lawsuits against Defendants or other officers.

Having carefully considered the parties' submissions and the record in this case, the court recommends granting Defendants' motion for summary judgment.

II. Discussion

A. Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal

claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing that there is a genuine issue for trial. The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322-323.

B. Exhaustion of Administrative Remedies

Defendants contend that they are entitled to summary judgment on Plaintiff's claims because he has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683

(4th Cir. 2005). Pursuant to SCDC policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance."

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford*, 548 U.S. 81, 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

Here, Plaintiff has filed Step 2 grievances, and therefore exhausted his administrative remedies with regard to the following matters: (1) KRCI 0835-07 (alleging lack of access to a law library resulting in a claimed failure to object to Report and Recommendation); (2) KRCI 0105-08 (denial of access to the mailroom on 1/29/08); (3) KRCI 0200-08 (denial of access to the mailroom on 1/30/08); (4) KRCI 0184-08 (denial of "calling" the mailroom for Plaintiff on 2/6/08); (5) KRCI 0189-08 (denial of copying handwritten legal material on 2/11/08); (6) KRCI 0289-08 (failure of legal mail to make it to its destination); (7) KRCI 0446-08 (delay of returned mail on 4/3/08); (8) TCI 626-09 (conviction in detention hearing despite requesting counsel substitute).

With regard to all other allegations in Plaintiff's complaint, he has failed to exhaust his administrative remedies, which he does not dispute in his opposition brief. Therefore, all claims regarding incidents not reflected on the above-referenced grievances must be dismissed for failure to exhaust administrative remedies.

C.   Denial of Access to Courts

Plaintiff claims he was denied access to the courts on several occasions. Defendants argue Plaintiff has not demonstrated he suffered any "actual injury" as a result of any of his allegations. The undersigned agrees.

In order to state a claim of denial of access to the courts, a plaintiff must allege that he had been prejudiced in pursuing non-frivolous litigation concerning his conviction or prison conditions. *Lewis v. Casey*, 518 U.S. 343, 350–53 (1996). The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Id.* at 343. In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996); *see also White v. White*, 886 F.2d 721, 723–24 (4th Cir. 1989).

A plaintiff must demonstrate that the defendants caused actual injury, such as the late filing of a court document or the dismissal of an otherwise meritorious claim. *Lewis*, 518 U.S. at 353-54. The actual injury requirement is not satisfied by just any type of frustrated legal claim. Actual injury requires that the inmate demonstrate that his

"nonfrivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 353–55.

Additionally, with regard to mail, occasional incidents of delay or nondelivery of mail "do not rise to a constitutional level." *Gardner v. Howard*, 109 F.3d 427, 430-31 (8th Cir. 1997); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990). Additionally, mere negligent interference by prison officials with an inmate's right to access to the courts does not state a cause of action under section 1983. *Pink v. Lester*, 52 F.3d 73, 75-76 (4th Cir. 1995).

Here, although Plaintiff alleges denial of access to the law library caused an inability to object to the Report and Recommendation in C/A No. 05-cv-2007-TLW-BM, a review of the docket reveals that Plaintiff timely filed objections. Therefore, Plaintiff has not demonstrated that he suffered an actual injury from his claim for denial of access to the law library.

Plaintiff also brings claims for: (1) denial of access to the mailroom on January 29–30 of 2008; (2) a denial of his request to call the mailroom on February 6, 2008; and (3) denial of photocopies of handwritten material on February 11, 2008. Plaintiff has failed to allege an actual injury to a legal proceeding or provide any evidence for the same, or demonstrate with proof an actual injury as a result of these claims. Therefore, Plaintiff has not shown a constitutional violation with regard to these incidents.

Plaintiff also alleges that on February 11, 2008, he deposited legal mail in the institutional mailbox, and the mail was destroyed by Defendant Kline and the KRCI

mailroom staff. However, Plaintiff provides no evidence that the mail was destroyed. Rather, Plaintiff appears to argue that he has documentation from the Richland County Clerk of Court indicating the mail never reached the clerk, although Plaintiff has attached no such documentation to his pleadings or briefing. In addition, Plaintiff has not shown an actual injury resulting from this incident. Plaintiff complaint simply states, "Plaintiff had general counsel defeated on a complaint in (circuit court) court of common pleas." (Compl. 14). Plaintiff has not provided any other information about his legal mail of February 11, 2008, and has not alleged he was foreclosed from filing a lawsuit or missed a deadline in a pending lawsuit. Therefore, Plaintiff's claim related to the February 11, 2008 incident cannot survive summary judgment.

Plaintiff's final claim related to the mail is that he placed a letter, which he claims was privileged mail, in the mail on March 17, 2008, and it was returned to him on April 3, 2008. A review of Plaintiff's grievance for the same matter indicates the mail was returned because it was not considered privileged mail. At any rate, Plaintiff fails to allege any actual injury resulting from this incident. Therefore, there are no genuine issues of material fact, and Defendants are entitled to summary judgment on this claim.

D. Disciplinary Hearing

In his claim with regard to a disciplinary hearing held by Defendant Brown, Plaintiff alleges his conviction for a disciplinary infraction is invalid because he requested a continuance in order to get counsel. Plaintiff's request was denied because he has demonstrated the ability to read and write above an eighth grade level.

In order to recover damages for an allegedly unconstitutional conviction, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must ordinarily prove that the conviction or sentence at issue has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477, 486–487 (1994). Although *Heck* involved a conviction in a court of law, the holding in *Heck* is equally applicable to cases which implicate the validity of an internal prison disciplinary conviction and sanction. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying *Heck* to claim challenging a disciplinary proceeding); *see also Stone-Bey v. Barnes*, 120 F.3d 718, 721 (7th Cir. 1997) ("The 'conviction' in the prison disciplinary sense is the finding of guilt on the disciplinary charge, and if success on the Plaintiff's Section 1983 claim necessarily would imply the invalidity of that finding, then *Heck* bars the claim until such time as its requirements are satisfied"). Plaintiff has failed to prove that his conviction was overturned or otehrwise called into question. Therefore, Plaintiff's claim with regard to his disciplinary conviction is barred by *Heck* and must be dismissed.

    E.    Retaliation

Plaintiff asserts Defendants acted in retaliation for his constitutionally-protected right to access the courts. "Retaliation by a public official for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper." *American Civil Liberties Union, Inc. v.*

*Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993). To state a claim of retaliation under § 1983, a plaintiff must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). An inmate must present more than conclusory accusations of retaliation. *Id.* at 74. Rather, he must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation. *See, e.g., Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996); *Hughes v. Bledsoe*, 48 F.3d 1376, 1387 n. 11 (4th Cir. 1995). Finally, a plaintiff must show that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of the retaliatory conduct. *American Civil Liberties Union*, 999 F.2d at 785. Where a plaintiff claims that he suffered retaliation for filing a lawsuit, he must show that the retaliatory acts adversely impacted his right to access the courts. *Id.* The adverse impact must be more than a *de minimis* inconvenience. *Id.* at 786 n. 6.

Plaintiff has failed to show more than conclusory allegations that any of Defendants actions have been in retaliation for lawsuits he has brought against Defendants or others. Plaintiff has not even alleged he has brought prior lawsuits against these Defendants. In addition, as discussed above, Plaintiff has presented no evidence that the incidents at issue have had a substantial impact on his previous lawsuits. Thus, Plaintiff has failed to establish a cause of action for retaliation under § 1983.

F.  Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless,

F.  Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless,

*assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

G.  Plainitff's Motion for a Preliminary Injunction

Plaintiff has requested a preliminary injunction based on various recent events similar to, but separate from, the incidents at issue in this case. "[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). "Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by a 'clear showing' that, among other things, it is likely to succeed on the merits at trial." *Id.* (citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, --- U.S. ----, ----, 129 S.Ct. 365, 374 (2008).

By statute, the PLRA grants courts the authority to enter a temporary restraining order or an order for preliminary injunctive relief in civil actions concerning prison conditions; however,

> [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings

required under subsection (a) (1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

18 U.S.C. § 3626(a)(2).

Traditionally, preliminary injunctions are sought to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). Mandatory preliminary injunctions, in comparison, compel action. The Fourth Circuit explained:

> "Mandatory preliminary injunctions [generally] do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). That is to say, a mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind.

*Id*. at 526. Here, Plaintiff's motions for injunctive relief must fail. Plaintiff's claims involve complaints of being placed in solitary confinement, allegations that his mail has been destroyed, and alleged fear for his safety. However, Plaintiff has not clearly stated why he believes he will suffer irreparable harm, nor has he shown he is likely to succeed on the merits. Therefore, Plaintiff has failed to establish the elements necessary to demonstrate the need for a preliminary injunction.

III. Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment [Entry #36] be granted and Plaintiff's Motion for a Preliminary Injunction [Entry #51] be denied.

IT IS SO RECOMMENDED.

August 10, 2010  
Florence, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**